NOTICE

Decision filed 06/01/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 230144-U

NO. 5-23-0144

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| DONNA S. BROSH, | ) | St. Clair County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 16-D-258 |
| | ) | |
| KENNETH N. BROSH, | ) | Honorable |
| | ) | Patrick R. Foley, |
| Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE SHOLAR delivered the judgment of the court.
Justices Boie and Vaughan concurred in the judgment.

**ORDER**

¶ 1 *Held*: The trial court's order denying Kenneth's petitions to terminate or modify maintenance was not against the manifest weight of the evidence. The trial court's order granting Donna's petition to extend maintenance was not an abuse of discretion. We affirm the trial court's order denying Kenneth's petition to modify child support.

¶ 2 Respondent, Kenneth Brosh, appeals the trial court's order denying his petitions to terminate or modify maintenance and denying his petition to modify child support. On appeal, Kenneth, proceeding *pro se*, raises numerous issues. First, he contends that the trial court erred by denying his petition to terminate maintenance. Second, he argues that the trial court erred by granting petitioner's petition to extend maintenance. Third, he argues that the trial court erred by denying his petition to modify child support. For the reasons that follow, we affirm.

1

¶ 3                                    I. BACKGROUND

¶ 4     We limit our recitation to those facts relevant to our disposition of this appeal. We will

recite additional facts in the analysis section as needed to address the specific arguments of the

parties. Because the parties share a last name, we will refer to them by their first names throughout

this decision.[1]

¶ 5     The parties initiated their dissolution proceedings in March 2016. It took three years to

obtain a judgment of dissolution. A judgment of dissolution was entered in December 2019. Donna

was awarded maintenance of $3,000 per month and child support of $1,837.50 per month.

Maintenance was reviewable beginning on January 1, 2022.

¶ 6     On October 23, 2020, the oldest child of the parties turned 18. The same day, Kenneth filed

a petition to terminate maintenance and modify child support. In the petition, Kenneth sought to

terminate spousal support due to a substantial change in circumstances. Kenneth argued that Donna

was in a marriage-like relationship with a man, Richard. Kenneth also sought to modify child

support, noting that his "financial outlook changed significantly" since the entry of the judgment

of dissolution. In support thereof, Kenneth suggested that his 2020 taxes would "show negative

earnings."

¶ 7     Donna responded, seeking an extension of maintenance. Donna argued that her financial

situation had not improved substantially enough to terminate maintenance, where (1) the pandemic

caused tenants from her rental properties to either not pay rent at all or pay at a reduced amount

and (2) the properties awarded to her in the dissolution required substantial improvements. Thus,

Donna contended that she was unable to earn enough income to "survive" without maintenance.

_____

[1]While this appeal was pending, Kenneth also appealed the entry of a plenary order of protection in case No. 5-23-0114. This Court affirmed the entry of the order of protection. See *In re Marriage of Brosh*, 2025 IL App (5th) 230114-U.

¶ 8 The trial court held an evidentiary hearing on the issues over the course of 11 nonconsecutive days. On February 7, 2023, the trial court entered a comprehensive order ruling on all maintenance and child support issues. The court first considered Kenneth's argument that maintenance should be terminated, because Donna was in a *de facto* marriage with a man named Richard. The court determined that Kenneth failed to sufficiently support his allegation to terminate maintenance. The court acknowledged that Donna was in a dating relationship, however, the testimony established that Richard spent one night in her home over a two-and-a-half year period. Donna borrowed money from Richard during the course of their relationship; however, she paid him back upon receiving back-due court ordered support. The evidence demonstrated that Donna and the children spent one weekend, Fourth of July, and Thanksgiving, with Richard.

¶ 9 The trial court also determined that Kenneth failed to meet his burden to establish a change in circumstances as to his income between the entry of the judgment of dissolution of marriage and the conclusion of the trial. The court determined that Kenneth failed to provide credible testimony or documents to substantiate that his income decreased. The court noted that Kenneth's credibility was at issue, where he was not transparent about payments received for rental properties.

¶ 10 Turning to Donna's request to extend maintenance, the trial court considered the factors set forth in section 510(a-5) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/510(a-5) (West 2020)). The court determined that the evidence demonstrated that Donna's "income has fluctuated greatly since the entry of the Judgment of Dissolution of Marriage." Specifically, the court considered that Donna received nine rental properties, few of which were move-in ready or already rented. Moreover, the COVID-19 pandemic began around

3

the same time as the receipt of the properties in the spring of 2020. Donna was inexperienced with managing and maintaining rental properties.

¶ 11    The trial court noted that Donna incurred over $35,000 in attorney fees as of December 2022, and the ongoing litigation resulted in "many hours taken away from the management of the properties." The court determined that Kenneth was late in payments for both child support and maintenance, and he stopped paying maintenance completely in January 2022. Donna had to "liquidate the majority of all her working capital to defend this lawsuit and bring the properties up to code." In the process, Donna had issues with maintenance personnel and suffered health-related issues.

¶ 12    Despite these "obstacles" the court noted that Donna fully rented six properties and only had three properties to complete at the time of trial. On the other hand, Kenneth received 25 properties, and as of August 2022 only 8 properties were rented. The court concluded that Donna obtaining a "minimum paying job" was "counterproductive to having time to manage and complete renovation" of the nine rental properties.

¶ 13    The court noted that it deviated below the guidelines in its judgment of dissolution of marriage based on the Marriage Act (*id*. § 504(b-3)) and the Illinois Uniform Premarital Agreement Act, (750 ILCS 10/7(b) (West 2020)), and it determined child support and maintenance in an amount and to the extent necessary to avoid undue hardship.

¶ 14    The court acknowledged that Donna testified that she was on state aid for food and medical benefits, where Kenneth failed to pay maintenance since January 2022. The court concluded that there was no change in circumstances to Kenneth's income. The court determined that Keneth's income for calculating child support and maintenance was $313,493.00 per year.

4

¶ 15    The trial court found that Donna "should be able to support herself in the future" "assuming timely payment of retroactive maintenance and the future maintenance" as set forth by the court. However, the court determined that "she will still need time to hire help and complete renovations needed for her three (3) vacant rental properties, and to maintain her other properties to assure they stay fully rented."

¶ 16    For all of these reasons, the trial court concluded that it was "[a]ppropriate to continue maintenance in the amount of $3,000.00 per month, for a period of thirty (30) months, retroactive to January 2022, and that all retroactive amounts to be paid in a lump sum in thirty (30) days." As to child support, the court determined that support for one child was reduced from $2,301.69, to $1,493,00, retroactive to January 1, 2022. Based on an overpayment from the deduction, the court concluded that Kenneth owed Donna $28,487.03 in retroactive support, paid within 30 days. Effective February 1, 2023, Kenneth should pay Donna $3,000.000 per month in maintenance until June 30, 2024. Child support in the amount of $1,493.00 was awarded to Donna paid monthly. The trial court also found Kenneth in willful contempt for discovery abuse and failure to timely pay all support payments.

¶ 17    On March 6, 2023, Kenneth filed a notice of appeal. However, an attorney fee issue remained unresolved. This Court held the matter in abeyance. Following resolution of attorney's fees, on March 4, 2025, this Court reinstated this appeal and directed Kenneth to file a new brief.

¶ 18                                II. ANALYSIS

¶ 19    On appeal, Kenneth, proceeding *pro se*, raises numerous issues. First, he contends that the trial court erred by denying his petition to terminate maintenance. Second, he argues that the trial court erred by granting Donna's petition to extend maintenance. Third, notwithstanding the fact that the trial court modified the amount of child support, he argues that the court erred by denying

his petition to modify child support. For the reasons that follow, we affirm. We consider each contention of error in turn.

¶ 20                    A. Denial of Kenneth's Petition to Terminate Maintenance

¶ 21    Regarding the petition to terminate or modify maintenance, Kenneth's argument appears twofold. First, he suggests that Donna was in a *de facto* marriage with Richard. Second, Kenneth appears to contend that he had a substantial change in circumstances sufficient to warrant the termination or modification of maintenance. We disagree and address each argument in turn.

¶ 22                              1. *De Facto* Marriage

¶ 23    First, Kenneth argues that the trial court erred by denying his petition to terminate maintenance, arguing that Donna was in a *de facto* marriage. Donna responds, arguing that the record is devoid of evidence that she cohabited with another person as required by statute to terminate maintenance. For the reasons that follow, we agree with Donna.

¶ 24    Section 510(c) of the Marriage Act (750 ILCS 5/510(c) (West 2024)) provides that "the obligation to pay future maintenance is terminated *** if the party receiving maintenance cohabits with another person on a resident, continuing conjugal basis." *Id*. The obligation to pay future maintenance would terminate by operation of law on the date the court finds that "conjugal cohabitation" began, not when the petition to terminate maintenance is filed. *Id.*; *In re Marriage of Snow*, 322 Ill. App. 3d 953, 957 (2001). The party who paid maintenance would then be entitled to reimbursement for all payments made after the date that cohabitation began. *In re Marriage of Miller*, 2015 IL App (2d) 140530, ¶ 40. The purpose of section 510(c) is not to control public morals. *Id.* Rather, "[t]he rationale behind termination of maintenance when resident, continuing, conjugal cohabitation exists is [to prevent] the inequity created when the ex-spouse receiving maintenance becomes involved in a husband-and-wife relationship but does not legally formalize

6

it, with the result that he or she can continue to receive maintenance." *In re Marriage of Herrin*, 262 Ill. App. 3d 573, 577 (1994). "Where the relationship has achieved a permanence sufficient for the trial court to conclude that it has become a substitute for marriage, equitable principles warrant a conclusion that the spouse has abandoned his or her rights to support from the prior marriage." (Internal quotation marks omitted.) *In re Marriage of Weisbruch*, 304 Ill. App. 3d 99, 105 (1999).

¶ 25 The party seeking the termination of maintenance has the burden of establishing that the receiving spouse is cohabitating with another. *In re Marriage of Susan*, 367 Ill. App. 3d 926, 929 (2006). Thus, Kenneth was required to prove that Donna engaged in a "resident, continuing conjugal" relationship. 750 ILCS 5/510(c) (West 2024). In short, Kenneth would need to prove that Donna and Richard engaged in a *de facto* marriage or a substitute for a marriage. *In re Marriage of Miller*, 2015 IL App (2d) 140530, ¶ 40.

¶ 26 To determine if that burden has been met, a court looks to the totality of the circumstances and considers the following nonexhaustive list of factors: "(1) the length of the relationship; (2) the amount of time spent together; (3) the nature of activities engaged in; (4) the interrelation of personal affairs (including finances); (5) whether they vacation together; and (6) whether they spend holidays together." *Id.* The list of factors is not exhaustive as each maintenance case is factually distinct. *Id.*; *In re Marriage of Susan*, 367 Ill. App. 3d at 930.

¶ 27 On appeal, a reviewing court will not reverse a trial court's ruling on a petition to terminate maintenance based on the existence of a *de facto* marriage unless that ruling is against the manifest weight of the evidence. *Id.* at 929-30. A decision is against the manifest weight of the evidence if the opposite conclusion is clearly evident or if the decision is unreasonable, arbitrary, or not based on the evidence. *In re Marriage of Nord*, 402 Ill. App. 3d 288, 294 (2010).

7

¶ 28     In the case before us, Kenneth failed to meet his burden to demonstrate that Donna was in a *de facto* marriage. The evidence supported the trial court's conclusion that although Donna was at one point in a dating relationship with Richard, she was never in a *de facto* marriage. The evidence demonstrated that Richard spent one night in Donna's home over a two-and-a-half year period. Although Donna borrowed money from Richard during the course of their relationship, she paid him back upon receiving back-due court ordered support. Donna and the children spent one weekend, Fourth of July, and Thanksgiving, with Richard. Based on the testimony and evidence presented, we conclude that the trial court's order denying Kenneth's petition to terminate maintenance was not against the manifest weight of the evidence, where the evidence supported the trial court's conclusion that Donna was not in a *de facto* marriage.

¶ 29                              2. Substantial Change in Circumstances

¶ 30     Next, Kenneth seems to argue that he had a change in circumstances as to his income between the entry of the judgment of dissolution of marriage and the conclusion of the trial. Donna responds, arguing that the trial court's finding that Kenneth failed to prove a substantial change in circumstances was supported by the record. For the reasons that follow, we agree with Donna.

¶ 31     Section 510(a-5) of the Marriage Act (750 ILCS 5/510(a-5) (West 2024)) provides a trial court may modify or terminate maintenance awarded in a dissolution proceeding "only upon a showing of a substantial change in circumstances." *Id*. Relevant to this appeal, when the court reviews maintenance, section 510(a-5) requires it to consider any change in the employment status of either party and whether the change has been made in good faith.

¶ 32     When the trial court adjudicates a petition for a modification of maintenance, it "shall make specific factual findings as to the reason for the modification as well as the amount, nature, and duration of the modified maintenance award." *Id*. § 510(c-5). A trial court's decision whether to

8

change an award of maintenance is a matter for its discretion, and a reviewing court should not disturb its decision absent an abuse of the trial court's discretion. *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24. "An abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *Id*. Further, a reviewing court must "defer to the trial court, as the trier of fact, on issues of witness credibility and the weight to be given to the testimony." *In re Marriage of Osseck*, 2021 IL App (2d) 200268, ¶ 49.

¶ 33　　In the case before us, the trial court determined that Kenneth failed to provide credible testimony or documents to substantiate that his income decreased. The court noted that Kenneth's credibility was at issue, where he was not transparent about payments received for rental properties. Moreover, in its January 9, 2023, order, the trial court determined there was no change in circumstances to Kenneth's income. The court determined that Kenneth's income for calculating child support and maintenance was $313,493.00 per year. This finding was further reiterated in the trial court's comprehensive order. As such, the court ultimately concluded that the evidence did not support an allegation sufficient to terminate maintenance. Based on the record before us, we cannot say that the trial court abused its discretion by denying Kenneth's petition to terminate maintenance.

¶ 34　　　　　　B. Grant of Donna's Petition to Extend Maintenance

¶ 35　　Second, Kenneth argues that the trial court erred by granting Donna's petition to extend maintenance. Donna responds, arguing that the 24-month maintenance extension was supported by the evidence. For the reasons that follow, we agree with Donna.

¶ 36　　A maintenance award provides the recipient the same standard of living after dissolution as the recipient enjoyed during the marriage. *In re Marriage of Brankin*, 2012 IL App (2d) 110203,

9

¶ 9. In determining whether to award or extend maintenance, a court must consider the parties' income, needs, future earning capacity, and standard of living during the marriage. 750 ILCS 5/504(a), 510(a-5) (West 2024). The court may also consider and require any other factor it deems "just and equitable." *Id.* § 504(a)(14). Given the variety of considerations and the need to tailor maintenance to the circumstances in each case, the court has wide discretion in determining whether maintenance is warranted. A court's maintenance determination will not be reversed absent an abuse of discretion. *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24.

¶ 37 Section 510(a-5) also requires the trial court to consider all the factors included in section 504(a) of the Act (750 ILCS 5/504(a) (West 2024)) concerning the entitlement to maintenance. Those are:

"(1) the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance as well as all financial obligations imposed on the parties as a result of the dissolution of marriage;

(2) the needs of each party;

(3) the realistic present and future earning capacity of each party;

(4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having forgone or delayed education, training, employment, or career opportunities due to the marriage;

(5) any impairment of the realistic present or future earning capacity of the party against whom maintenance is sought;

(6) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment;

10

(6.1) the effect of any parental responsibility arrangements and its effect on a party's ability to seek or maintain employment;

(7) the standard of living established during the marriage;

(8) the duration of the marriage;

(9) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and the needs of each of the parties;

(10) all sources of public and private income including, without limitation, disability and retirement income;

(11) the tax consequences to each party;

(12) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse;

(13) any valid agreement of the parties; and

(14) any other factor that the court expressly finds to be just and equitable." *Id.*

¶ 38    In the case before us, the record demonstrates that the trial court considered the evidence and all relevant statutory factors. The evidence presented supported the court's determination that Donna's income fluctuated since the dissolution. Donna received nine rental properties, few of which were move-in ready or already rented. Additionally, Donna was inexperienced with managing and maintaining rental properties.

¶ 39    The record also supported the court's determination that Donna incurred significant attorneys fees over the course of the litigation, which resulted in time taken away from property management. Moreover, Kenneth failed to pay support and maintenance, which resulted in Donna liquidating capital. During this time, Donna had issues with maintenance personnel and suffered health-related issues.

11

¶ 40    The trial court correctly observed that despite these "obstacles" Donna fully rented six properties and only had three properties to complete at the time of trial. On the other hand, Kenneth received 25 properties, and as of August 2022, only 8 properties were rented. The court concluded that Donna obtaining a "minimum paying job" was "counterproductive to having time to manage and complete renovation" of the nine rental properties.

¶ 41    The trial court acknowledged that Donna "should be able to support herself in the future" "assuming timely payment of retroactive maintenance and the future maintenance" as set forth by the court. However, the court determined that "she will still need time to hire help and complete renovations needed for her three (3) vacant rental properties, and to maintain her other properties to assure they stay fully rented." For all of these reasons, the trial court concluded that it was "Appropriate to continue maintenance in the amount of $3,000.00 per month, for a period of thirty (30) months, retroactive to January 2022, and that all retroactive amounts to be paid in a lump sum in thirty (30) days." Based on the testimony and evidence in the record on appeal, we cannot say that the trial court abused its discretion by entering an order extending maintenance for Donna.

¶ 42    We note that Kenneth raises a variety of claims related to a prenuptial agreement between the parties. The record demonstrates that Kenneth initially filed a notice of appeal from the judgment of dissolution. However, this Court ultimately voluntarily dismissed the appeal when Kenneth failed to move forward with the appeal. Waiver is the voluntary relinquishment of a known right. *United States v. Olano*, 507 U.S. 725, 733 (1993). Where Kenneth voluntarily dismissed his appeal from the judgment of dissolution, any arguments related to a prenuptial agreement are waived. Therefore, we decline to consider any issues or argument related to the prenuptial agreement.

12

¶ 43                    C. Denial of Kenneth's Petition to Modify Child Support

¶ 44    Finally, Kenneth contends that the trial court erred by denying his petition to modify child support. The decision to modify child support "is a two-step process. First, the court must find a substantial change in circumstances. Second, the court must look to the statutory factors to determine the new amount." *In re Marriage of Izzo*, 2019 IL App (2d) 180623 ¶ 25.

¶ 45    In support of his position, Kenneth appears to argue that his petition was never called for a hearing. Kenneth's claim is rebutted by the record, where the trial court expressly considered issues related to child support and ultimately ruled on them as part of its comprehensive order. Specifically, the court determined that support for one child was reduced from $2,301.69, to $1,493,00, retroactive to January 1, 2022, upon the parties' oldest child turning 18. Thus, it is disingenuous for Kenneth to contend that the trial court simply failed to consider his request to reduce child support. As such, the trial court's findings related to child support are affirmed.

¶ 46                              D. Request for Sanctions

¶ 47    Finally, we note that Donna requests that respondent be sanctioned for filing a frivolous appeal pursuant to Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994). Rule 375(b), which states:

> "If, after consideration of an appeal or other action pursued in a reviewing court, it is determined that the appeal or other action itself is frivolous, or that an appeal or other action was not taken in good faith, for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, or the manner of prosecuting or defending the appeal or other action is for such purpose, an appropriate sanction may be imposed upon any party or the attorney or attorneys of the party or parties. An appeal or other action will be deemed frivolous where it is not reasonably well grounded

in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law. An appeal or other action will be deemed to have been taken or prosecuted for an improper purpose where the primary purpose of the appeal or other action is to delay, harass, or cause needless expense." Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994).

¶ 48    " 'The imposition of Rule 375 sanctions is left entirely to the discretion of the reviewing court.' " *Fairfield Homes, Inc. v. Amrani*, 2023 IL App (1st) 220973, ¶ 47 (quoting *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 87). " '[T]he appeal is considered frivolous if it would not have been brought in good faith by a reasonable, prudent attorney.' " *Gillard v. Northwestern Memorial Hospital*, 2019 IL App (1st) 182348, ¶ 62 (quoting *Dreisilker Electric Motors, Inc. v. Rainbow Electric Co.*, 203 Ill. App. 3d 304, 312 (1990)).

¶ 49    Donna contends that based on the facts, record, and law, no reasonable attorney or self-represented litigant could have pursued this appeal in good faith. She contends that Kenneth's goal is to delay, harass, and cause needless expense. Donna contends that she has incurred "tens of thousands of dollars in attorneys' fees to defend meritless appeals on moot issues." She also argues that Kenneth's "purpose can only be to harass and cause needless expense" to her.

¶ 50    However, Kenneth presented case law and argument in support of his contention that the circuit court abused its discretion. While we find Kenneth's arguments without merit and affirm the circuit court's judgment, Kenneth's appeal does not fully rise to the level of frivolousness.

¶ 51    Finally, we note that Donna seeks the imposition of sanctions in a separate appeal, case No. 5-23-0114. This Court affirmed the entry of an order of protection in *In re Marriage of Brosh*, 2025 IL App (5th) 230114-U. Because all issues related to *In re Marriage of Brosh*, 2025 IL App (5th) 230114-U were considered and decided, and Donna failed to request sanctions in that case

14

directly, we decline to consider any issues related to *In re Marriage of Brosh*, 2025 IL App (5th) 230114-U.

¶ 52    Consequently, we deny Donna's request for the imposition of attorney fees under Rule 375.

¶ 53                                III. CONCLUSION

¶ 54    For these reasons, the St. Clair County trial court's order denying Kenneth's petitions to terminate or modify maintenance, granting Donna's petition to extend maintenance, and denying Kenneth's petition to modify child support are affirmed.

¶ 55    Affirmed.